UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALFRED P. MANINT, III, Individually and on behalf of all others similarly situated** | **CASE NO.** |
| **Plaintiffs** | |
| **VERSUS** | **SECTION** |
| **BP, PLC; BP AMERICA, INC.; BP CORPORATION NORTH AMERICA, INC. f/k/a BP AMOCO CORPORTION; BP COMPANY NORTH AMERICA, INC.; BP PRODUCTS NORTH AMERICA, INC.; TRANSOCEAN, LTD.; TRANSOCEAN DEEPWATER, INC.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; HALLIBURTON ENERGY SERVICES, INC. and CAMERON INTERNATIONAL CORPORATION f/k/a/ COOPER-CAMERON CORPORATION** | **MAGISTRATE** |
| | **JURY DEMAND** |
| **Defendants** | |

## CLASS ACTION COMPLAINT

Plaintiff Alfred P. Manint, III ("Plaintiff"), individually, and on behalf of all others similarly situated (the "Class"), allege as follows:

### INTRODUCTION

1. This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiff and the Class Members as a result of the April 20, 2010 oil spill, explosion and sinking of the offshore oil rig Deepwater Horizon (the "Deepwater Horizon"), in the Gulf of Mexico on the intercontental shelf approximately 50 miles from the Louisiana coast.

2.     Following the sinking of the Deepwater Horizon on April 22, 2010, large quantities of oil continuously leaked into the Gulf of Mexico from the oil well upon which the Deepwater Horizon had been performing completion operations, and was, thereafter, washed ashore along the northern coastline of the Gulf.

3.     The resulting oil slick has, among other things, has caused detrimental effects upon the Gulf Coast area including the Gulf of Mexico and the Gulf coastline.

4.     Plaintiff and the Class are individuals and entities who have suffered legitimate damage as a result of the April 20, 2010 oil spill. This oil spill has caused and will continue to cause damages to Plaintiff and the Class which include the loss of use and enjoyment of their properties, and damages to their physical and mental health and welfare.

5.     BP (hereinafter defined) has consistently and publicly promised to take full responsibility for this oil spill and to pay all legitimate claims caused therefrom.

6.     Plaintiff and the Class herein allege some of the very same claims that BP has committed to consider and pay as a result of this catastrophic oil spill. Specifically, Plaintiff herein is the owner of a fishing camp/second home located in the Parish of Plaquemines, State of Louisiana in what is known as the Myrtle Grove Plantation bearing the designation Wilkerson Campsite Lots 33 & 34 on the Wilkerson Canal whose location is now within the vicinity of the fast moving oil slick and the dispersant chemicals. The oil spill has damaged and will continue to damage the Plaintiff and the Class herein.

7.     The fire, explosion, sinking of the Deepwater Horizon and the resulting oil spill were caused by the negligence of each of the Defendants, rendering them liable jointly and severally to Plaintiff and the Class for all damages as set forth herein.

**PARTIES**

8. Plaintiff, Alfred P. Manint, III, is a resident of the State of Louisiana. Plaintiff is an owner of a fishing camp/second home in the Parish of Plaquemines, State of Louisiana. Plaintiff and the Class he seeks to represent have suffered damages/injuries as a result of the contamination caused by the spill and the events as set forth herein. These damages include the loss of use and enjoyment of their fishing camps/second homes and resulting damages to their physical and mental health and welfare.

9. Defendant BP, PLC is a British corporation, organized under the laws of the United Kingdom. BP, PLC does business within this District, within the State of Louisiana and throughout the Untied States. BP, PLC is a global oil company.

10. Defendant BP America, Inc. ("BP America") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP America does business within this District, within the State of Louisiana and throughout the Untied States. BP America is a subsidiary of BP, PLC.

11. Defendant BP Corporation North America, Inc., formerly known as BP Amoco Corporation ("BP Amoco"), is an Indiana corporation with its principal place of business in Houston, Texas. BP Amoco does business within this District, within the State of Louisiana and throughout the Untied States. BP Corporation North America, Inc. is a subsidiary of BP America, Inc.

12. Defendant BP Company North America, Inc. ("BP NA") is a Delaware Corporation with its principal place of business in Warrenville, Illinois. BP NA does business within this

District, within the State of Louisiana and throughout the Untied States.  BP NA is a subsidiary of BP Amoco.

13. Defendant BP Products North America, Inc. ("BP Products") is a Maryland corporation, with its principal place of business in Houston, Texas.  BP Products does business within this District, within the State of Louisiana and throughout the Untied States.  BP Products is a subsidiary of BP Company North America, Inc.

14. Defendants BP America, BP Amoco, BP NA and BP Products are wholly owned subsidiaries of the global parent corporation, Defendant BP, PLC  Collectively, they are referred to herein as "BP."

15. Defendant Transocean, Ltd. ("Transocean, Ltd.") is a Swiss corporation. Transocean, Ltd. does business within this District and within the State of Louisiana. Transocean Ltd. is a global offshore drilling contractor and provider of drilling management services.

16. Defendant Transocean Deepwater, Inc. ("Transocean Deepwater") is a Delaware corporation with its principal place of business in Houston, Texas.  Transocean Deepwater does business within this District, within the State of Louisiana and throughout the United States. Transocean Deepwater is a subsidiary of Transocean Ltd.

17. Defendant Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas.  Transocean Offshore does business within this District, within the State of Louisiana and throughout the United States. Transocean Offshore is a subsidiary of Transocean Ltd.

18. Defendants Transocean Deepwater and Transocean Offshore are wholly owned subsidiaries of the global parent corporation, Defendant Transocean Ltd. Collectively, they are referred to herein as "Transocean."

19. Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with two headquarters, one in Houston, Texas and one in Dubai, United Arab Emirates. Halliburton does business within this District, within the State of Louisiana and throughout the United States.

20. Defendant Cameron International Corporation formerly known as Cooper-Cameron Corporation ("Cameron") is a Delaware Corporation with its principal place of business in Houston, Texas. Cameron does business within this District, within the State of Louisiana and throughout the United States.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and because this matter is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business.

22. Jurisdiction is also appropriate under 28 U.S.C. § 1331, because the claims asserted by Plaintiff arise under the laws of the United States of America, including the laws of the State of Louisiana which have been declared, pursuant to 43 U.S.C. § 1331(f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer Continental Shelf from which the oil spill originated. Title 43 U.S.C. § 1331 (1) extends exclusive Federal jurisdiction to the outer Continental Shelf.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants have received substantial compensation and other consideration in this District.

## FACTUAL ALLEGATIONS

24. Deepwater Horizon was a semi-submersible oil rig built owned by Transocean and leased to BP.

25. BP leased the Deepwater Horizon to drill exploratory wells on the outer Continental Shelf off the coast of Louisiana.

26. BP holds the lease granted by the U.S. Minerals Management Service ("MMS") that allows BP to drill for oil and perform oil production related operations on the outer Continental Shelf in the Gulf of Mexico. As of April 20, 2010, BP operated the oil well that is the source of the current catastrophic oil spill at issue herein.

27. Transocean owned, and BP was operating, the Deepwater Horizon.

28. At all times material herein, the Deepwater Horizon was owned, managed, controlled, chartered or operated by Transocean or BP.

29. Upon information and belief, Halliburton was engaged in cementing operations aboard the Deepwater Horizon and improperly and negligently performed these duties.

30. Upon information and belief, Cameron manufactured and/or supplied the Deepwater Horizon's blow-out preventer valves (BOPs), which were defective.

31. During the course of this cementing work, an explosion and fire occurred on the Deepwater Horizon causing the deaths and injuries of many workers on the rig which eventually sank on April 22, 2010.

32. Deepwater Horizon had been connected to the wellhead at the seafloor by a 5,000-foot pipe ("riser").

33. An undetermined but extremely large amount of oil has been leaking from the wellhead and riser resulting in a continuously expanding oil slick. This expanding, fast-moving oil slick covers an area exceeding 3500 square miles, spreading toward and into the Gulf coastlines of Alabama, Florida, Louisiana, Mississippi and Texas.

34. This expanding oil slick made landfall on the Louisiana coastline on April 30, 2010, and is continuing to affect additional coastlines.

35. The oil spill has already caused catastrophic damage to the Gulf of Mexico and to the Gulf coastline. Plaintiff and the Class are suffering and will continue to suffer serious damages as a result of the oil spill.

36. At this time the wellhead has not been capped and the flow of oil continues uncontrolled into the Gulf of Mexico and into Gulf coast areas.

37. At all time material herein, the risks of offshore drilling were well known to Defendants who knew their work aboard the Deepwater Horizon was particularly risky.

38. The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill were caused by the negligence of Defendants, which renders Defendants liable jointly and severally to Plaintiff and the Class for all damages herein alleged.

39.     The injuries and damages suffered by Plaintiff and the Class were caused by Defendants' negligent, willful and/or wanton failure to adhere to recognized industry standards of care and safety.

40.     Defendants knew the dangers associated with deep water drilling and failed to take appropriate measures to prevent these catastrophic damages.

41.     The oil spill and the resulting contamination have caused and will continue to cause damages to Plaintiff and the Class.

42.     The extend of damages from the oil spill that are not yet fully known.  Plaintiff and the Class  reserve the right to amend this Complaint when additional information becomes available.

### PLAINTIFF'S CLASS DEFINITION AND CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on his own behalf and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23.

44.     Plaintiff brings this action as a class action on behalf of a Class which consists of all persons or entities who have been adversely impacted by the oil spill and subsequent remedial events as follows:

> All persons or entities who are owners of fishing camps/second homes in the states of Alabama, Florida, Louisiana, Mississippi and Texas, who have suffered the loss of the use and enjoyment of their properties and all persons who have suffered damages to their physical and mental health and welfare as a result of the oil spill.

45.     Excluded from the Class are: (a) the officers and directors of the Defendants; (b) any entity in which any Defendant has a controlling interest; (c) any judge or judicial officer assigned to this matter along with his or her immediate family; and (d) any legal representative of Defendants or their successors.

46. **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class is unknown to Plaintiff at this time but can be ascertained through appropriate discovery. Plaintiff believes that there are thousands in the proposed Class.

47. **Typicality**. The claims of Plaintiff are typical of the claims of the members of the Class. All members of the Class are similarly affected by Defendants' negligent/wrongful conduct.

48. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in complex class action, maritime and environmental litigation.

49. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his Counsel have interests adverse to those of the Class.

50. **Predominance of Common Questions of Fact and Law**. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants caused and/or contributed to the explosion, fire and oil spill;

(b) whether Defendants were negligent in the design, maintenance, manufacture, and/or operation of the of the oil rig and or its appurtenances or equipment;

(c) whether Defendants knew or should have known the risk undertaken herein;

(d) whether Defendants utilized all available safety mechanisms to prevent the explosion;

(e) whether Defendants knew or should have known that their activities could cause damage to Plaintiff and the Class;

(f) whether Defendants acted with reckless disregard;

(g)     whether Defendants breached duties owed to Plaintiff and the Class;

(h)     whether laws and regulations were violated by Defendants; and

(i)     whether members of the Class have sustained damages and what measure of damages is proper.

51.     **Superiority**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, without a class action, individual members of the Class would face burdensome litigation expenses, deterring them from adequately protecting their rights.  Because of the ratio of the economic value of the individual Class member claims in comparison to the high litigation costs in complex environmental cases such as this, few could access just legal recourse.  Absent a class action, members of the Class would continue to incur harm without remedy.  There will be no difficulty in the management of this action as a class action.

52.     The consideration of common questions of fact and law will conserve judicial resources and promote the fair and consistent resolution of legitimate claims.

## FIRST CAUSE OF ACTION:  NEGLIGENCE

53.     Plaintiff repeats and realleges each and every allegation contained herein.

54.     Defendants owed a duty to Plaintiff and the Class to exercise reasonable care including the construction, operation and maintenance of the Deepwater Horizon/oil well.

55.     Defendants had a heightened duty of care to Plaintiff and the Class because of the great danger and the environmental risk associated with the drilling of oil.

56.     Defendants breached their legal duty to Plaintiff and the Class by failing to exercise reasonable care and acting with reckless, willful, and wanton disregard for the Plaintiff and the Class.

57. The fire, explosion and resulting oil spill was caused by the concurrent negligence of all Defendants.

58. Upon information and belief, Plaintiff maintains that the fire, explosion and resulting oil spill were caused by the joint negligence and fault of the Defendants, as evidenced by the following:

    (a)    Failing to properly operate the Deepwater Horizon;

    (b)    Operating the Deepwater Horizon in such a manner that a fire, explosion and resulting oil spill occurred;

    (c)    Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

    (d)    Acting in a careless and negligent manner without due regard for the safety of others;

    (e)    Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon;

    (f)    Operating the Deepwater Horizon with untrained and/or unlicensed personnel;

    (g)    Failing to take appropriate action to avoid and/or mitigate the accident and resulting injuries/damages;

    (h)    Failing to implement policies and/or procedures to safely conduct offshore operations in the Gulf of Mexico;

    (i)    Failing to bring the oil spill under control;

    (j)    Failing to provide appropriate accident preventive equipment;

    (k)    Failing to properly install, maintain and operate BOPs and/or use of defective BOPs;

    (l)    Failing to properly conduct well and well cap cementing operations;

    (m)    Acting in a manner that justifies imposition of punitive damages; and

    (n)    Such other acts of negligence and omissions as will be shown at the trial of this matter.

59. In addition, and in the alternative, the fire, explosion and resulting oil spill were caused by defective equipment, including the BOPs, which were in the care, custody and control of Defendants.

60. Defendants knew or should have known that their negligent, willful, wanton and/or reckless conduct would foreseeably result in this catastrophe which caused damages to Plaintiff and the Class.

61. In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiff and the Class were caused by the acts and/or omissions of Defendants that are beyond proof by Plaintiff and the Class, but which were within the knowledge and control of Defendants. There is no possible conclusion other than the fire, explosion, sinking and oil spill resulted from the negligence of Defendants.

62. Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had Defendants exercised the high degree of care imposed on them. Plaintiff therefore pleads the doctrine of res ipsa loquitur.

63. Plaintiff and the Class are entitled to a judgment against Defendants for damages suffered as a result of Defendants' negligence.

## SECOND CAUSE OF ACTION:  GROSS NEGLIGENCE

64. Plaintiff repeats and realleges each and every allegation contained herein.

65. Defendants owed a duty to all Plaintiff and the Class to exercise reasonable care in the manufacture, maintenance and operation of the Deepwater Horizon.

66. Defendants had a heightened duty of care to Plaintiff and the Class because of the great danger associated with deepwater drilling from floating platforms, and the very high risk of

blowouts during cementing work such as that Deepwater Horizon was performing at the time of the explosion.

67. Defendants breached their legal duty to Plaintiff and the Class, failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent manufacture, maintenance, and/or operation of the Deepwater Horizon.

68. Defendants knew or should have known that their wanton or reckless conduct would foreseeably result in a disastrous blowout and oil spill, causing damage to those affected by the oil spill.

69. As a direct and proximate result of Defendants wanton or reckless conduct, Plaintiff and the Class have suffered legally compensable injuries and damages in an amount to be proven at trial.

70. Defendants' wanton or reckless conduct, as described herein, entitles Plaintiff and the Class to punitive damages.

### THIRD CAUSE OF ACTION:  NEGLIGENCE *PER SE*

71. Plaintiff repeats and realleges each and every allegation contained herein.

72. Defendants' conduct with regard to the manufacture, maintenance and/or operation of drilling operations and oil rigs such as the Deepwater Horizon is governed by numerous state and federal laws and permits issued under the authority of these laws.

73. These laws and permits create statutory standards that are intended to protect and benefit Plaintiff and the Class.

74. Defendants' violations of these statutory standards constitute negligence per se under Louisiana law.

75.     Defendants' violations of these statutory standards proximately caused injury to Plaintiff and the Class, warranting both compensatory and punitive damages.

### FOURTH CAUSE OF ACTION:  OIL POLLUTION ACT OF 1990

76.     Plaintiff repeats and realleges each and every allegation contained herein.

77.     The Oil Pollution Act imposes liability upon a "responsible party for a ... facility from which oil is discharged ... into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. § 2702.

78.     Section 2702(b)(2)(C) provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed or lost, without regard to the ownership or management of the resources."

79.     BP and the other Defendants are liable pursuant to Section 2702 for all the damages that result from the oil spill.

### FIFTH CAUSE OF ACTION:  LOUISIANA OIL SPILL PREVENTION AND RESPONSE ACT

80.     Plaintiff repeats and realleges each and every allegation contained herein.

81.     The Louisiana Oil Spill Prevention and Response Act ("LOSPRA") imposes liability upon a responsible party for "intentional or unintentional act or omission by which harmful quantities of oil are spilled, leaked, pumped, poured, emitted, or dumped into or on coastal waters of the state or at any other place where, unless controlled or removed, they may drain, seep, run, or otherwise enter coastal waters of the state." La. R.S. 30:2454.

82.     Pursuant to the LOSPRA, the owner of an oil well discharging petroleum pollutants into a waterway is liable for up to $350,000,000 in damages arising from that discharge. Furthermore, pursuant to La. R.S. 30:2482, the owner of the well must pay all pollution removal costs and damages, regardless of any defenses that the owner may assert.  As a result of the disaster, Plaintiff and the Class have suffered the type of damages that may be recovered pursuant to the LOSPRA, and they demand compensation from Defendants in amounts to be determined by this Court.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, certifying Plaintiff as Class Representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing undersigned counsel as counsel for the Class;

B.     Awarding compensatory damages in favor of Plaintiff and the Class against Defendants, jointly and severally, for all damages sustained as a result of Defendants' negligence, in an amount to be proven at trial, including interest thereon;

C.     Awarding punitive damages;

D.     Awarding Plaintiff and the Class reasonable costs and expenses including expert fees;

E.     Such other and further relief as the Court may deem just and proper; and

F.  Trial by jury on all issues against all Defendants.

        RESPECTFULLY SUBMITTED:

BY:   S/ Rebecca A .Cunard
      REBECCA A. CUNARD
      LA. BAR ROLL No.: 20154
      CUNARD LAW FIRM
      9214 INTERLINE AVENUE
      BATON ROUGE, LOUISIANA 70809-1907
      TELEPHONE:  (225) 925-2978
      FACSIMILE:  (225) 925-8192
      EMAIL:  rebecca@cunardlaw.com

      ROY F. AMEDEE, JR.
      LA. BAR ROLL No.:  2449
      228 ST. CHARLES AVENUE, SUITE 801
      NEW ORLEANS, LOUISIANA  70130
      TELEPHONE:  (504) 592-3222
      FACSIMILE:  (504) 592-8783
      EMAIL:  ramedeejr@aol.com

      DANIEL S. FOLEY
      LA. BAR ROLL No.:  5632
      TIMOTHY K. LAMY
      LA. BAR ROLL No.:  17015
      BARKER, BOUDREAUX, LAMY & FOLEY
      228 ST. CHARLES AVENUE, SUITE 1110
      NEW ORLEANS, LOUISIANA 70130
      TELEPHONE (504) 586-9395
      FACSIMILE:  (504) 586-9410
      EMAIL:  danfoley47@aol.com

      **ATTORNEYS FOR PLAINTIFFS**